**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| GUILLERMO CRUZ RUIZ, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MELLISSA B. HARPER, New Orleans Field Office Director of Immigration and Customs Enforcement, Enforcement and Removal Operations, in her official capacity; U.S. DEPARTMENT OF HOMELAND SECURITY; and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) | No. 2:26-cv-02092-SHL-atc |
| Respondents. | ) | |

**ORDER GRANTING PETITION**

On February 2, 2026, Petitioner Guillermo Cruz Ruiz filed a petition for writ of habeas

corpus under 28 U.S.C. § 2241 after he was held in immigration detention without a bond

hearing.  (ECF No. 2.)  He seeks release on bond and an award of attorney's fees under the Equal

Access to Justice Act.  (Id. at PageID 25.)  On February 4, the Court issued an order requiring

Cruz to supplement his petition with sufficient facts "affirmatively showing why he should not

be considered an 'arriving alien' under 8 U.S.C. § 1225" and requiring Respondents to respond.

(ECF No. 7 at PageID 38–39.)  Cruz filed his supplemental facts the following day.  (ECF No.

8.)  Respondents responded five days later.  (ECF No. 11.)  Cruz replied the next day.  (ECF No.

12.)  For the reasons explained below, Cruz is entitled to immediate release, and the Petition is

**GRANTED**.

## BACKGROUND

Cruz, a citizen of Mexico, entered the United States near Laredo, Texas, in March 2007, when he was 17 years old. (ECF No. 11 at PageID 52.) "He has never departed the United States since that entry and has therefore remained continuously physically present in this country for approximately nineteen years." (ECF No. 8 at PageID 40.) According to Cruz, he "was not placed in expedited removal proceedings and was never treated as an applicant for admission at a port of entry." (Id. at PageID 41.) He "has no criminal history whatsoever," and "no history of violence, substance abuse, or gang involvement." (Id.) Instead, he has "maintained steady employment, supported his family, and developed substantial community ties in Memphis." (Id.)

In 2014, Cruz married a United States citizen. (Id.) He has acted as a father to his wife's children from a prior marriage, "including an eleven-year-old child with special needs." (Id.) His wife, who suffers from high blood pressure, anxiety, and depression, "does not work outside the home, and the family's financial stability has always depended on Mr. Cruz's employment and income." (Id.)

On January 16, 2026, Cruz was apprehended. (ECF No. 11 at PageID 52.) He remains in custody at the West Tennessee Detention Facility in Mason, Tennessee. (ECF No. 2 at PageID 19.) The present Petition followed, the crux of which argues that Cruz was detained without a bond hearing.

Indeed, under recently adopted guidance from DHS and ICE, Cruz is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the INA and was allegedly declared ineligible to be released on bond. Until recently, however, most noncitizens in this situation were given bond hearings under a different provision, § 1226(a). See Godinez-Lopez v. Ladwig, No. 25-CV-02962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025). Section 1226(a)

2

allows immigration authorities to release immigrants from detention on a bond of $1,500 or more, unless they require detention for certain reasons.  For example, noncitizens with certain criminal records may not be released on bond.  8 U.S.C. § 1226(c).

Section 1225(b)(2)(A), on the other hand, prohibits a bond for all "applicants for admission" who are "seeking admission."  "Applicants for admission" has been interpreted to mean recent arrivals, including those who have not been "physically present in the United States continuously" for the previous two years.  See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien described in this clause is an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . .").

But, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued a new policy with a novel interpretation of §§ 1225(b)(2)(A) and 1226(a).  Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.").  The policy reclassified all undocumented immigrants, even those who have lived in the United States for years, as "applicants for admission."  (Id.)  And all "applicants for admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A).  (Id.)

Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status.  As a result, all undocumented immigrants awaiting removal are detained without a bond hearing.  This new interpretation was later adopted by the Board of Immigration Appeals ("BIA") in a published

3

decision, Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).  (ECF No. 1 at PageID 12–13, 16.)

Cruz faces the risk of continued detention without a bond hearing.  His Petition alleges Due Process violations under the Fifth Amendment, a violation of his Fourth Amendment right against unreasonable seizure, and a violation of the Eighth Amendment prohibition against cruel and unusual punishment.  (ECF No. 2 at PageID 24–26.)  He seeks (1) a declaration that his "detention is governed by 8 U.S.C. § 1226(a), not § 1225(b)(2)(A), and that his continued detention without bond proceedings is unlawful and violates the Fifth Amendment's Due Process Clause"; (2) his immediate release; and (3) an injunction that Respondents not pursue his detention under § 1225(b)(2)(A) "absent a new, lawful basis for detention supported by individualized findings."  (ECF No. 12 at PageID 80.)

In response, Respondents contend that Cruz failed to exhaust his administrative remedies; that he should be treated for due process purposes as if stopped at the border; that his seizure was reasonable; and that, if the Court finds that § 1226(a) applies to Cruz, he should be granted a bond hearing and not immediately released.  (ECF No. 11 at PageID 54–63.)

## ANALYSIS

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  Lopez-Campos v. Raycraft, No. 25-CV-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)).  Cruz challenges his detention without bond as violative of his constitutional rights.  (ECF 1 at PageID 2.)  The Court first considers the threshold question of whether Cruz should be required to exhaust his administrative remedies.  Then, the statutes are construed to determine whether §1225 or § 1226

is applicable.  A due process analysis follows.  Finally, the appropriate manner of release is analyzed.

I.      **Exhaustion**

If Congress "specifically mandates" exhaustion of administrative remedies, a petitioner must pursue relief through those administrative processes before seeking habeas relief. McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  When Congress is silent on administrative exhaustion, "sound judicial discretion governs." Id.  Thus, the doctrine of prudential exhaustion holds that, in the absence of a textual exhaustion requirement, courts can use discretion to refuse to hear habeas petitions that challenge bond determinations until a petitioner exhausts available administrative remedies.  McCarthy, 503 U.S. at 144.  The Sixth Circuit has previously applied this doctrine to dismiss petitions for lack of jurisdiction.  See Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS 19661, at 1–2 (6th Cir. July 16, 2018).  In the context of immigrant detention, some district courts require detained immigrants to exhaust their administrative remedies—by appealing bond decisions to the BIA and receiving adverse decisions—before the courts will review their habeas petitions.  E.g., Villalta v. Greene, No. 25-cv-01594, 2025 U.S. Dist. LEXIS 169688, at *6–7 (N.D. Ohio Aug. 5, 2025).

In some cases, however, exhaustion is excused, and courts review habeas petitioner claims.  Courts have reached these conclusions when (1) "the legal question is fit for resolution and delay means hardship, or (2) exhaustion would prove futile." Shalala v. Ill. Council on Long Term Care, 529 U.S. 1, 13 (2000) (citation modified).

An issue is fit for judicial resolution when it presents a purely legal question. Contreras-Lomeli v. Raycraft, No. 25-cv-12826, 2025 U.S. Dist. LEXIS 207162, at *8 (E.D. Mich. Oct. 21, 2025) (citing Loper Bright Enters. v. Raimando, 603 U.S. 369, 385 (2024)).  Further, when

5

administrative procedures involve "an indefinite or unreasonable timeline," such delays result in hardship.  Id.  If there is a risk of extended, "potentially unlawful detention" during such delay, then exhaustion is excused.  Id.

As for futility, waiver of exhaustion "is appropriate when an administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought."  Id. at *9 (quoting Cooper v. Zych, No. 09-CV-11620, 2009 U.S. Dist. LEXIS 75423, at *2 (E.D. Mich. Aug. 25, 2009)).

Respondents argue that the Court should dismiss the Petition based on prudential exhaustion, as Cruz has not appealed to the BIA and received an adverse decision.  (ECF No. 11 at PageID 55.)  They recognize that Congress has not imposed an administrative exhaustion requirement, and that "sound judicial discretion governs" the Court's decision.  (Id. at PageID 43 (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)).)  But they point to the Sixth Circuit's opinion in Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS 19661, at *1–2 (6th Cir. July 16, 2018), and certain decisions in the Northern District of Ohio, e.g. Monroy Villalta v. Greene, 794 F. Supp. 3d 528 (N.D. Ohio 2025), which required petitioners to appeal to the BIA before seeking habeas relief under "prudential principles of exhaustion."  (ECF No. 11 at PageID 54–56.)

But neither 8 U.S.C. §§ 1225 nor 1226 contain a textual exhaustion requirement for immigrants in ICE custody.  Similarly, 28 U.S.C. § 2241 lacks an exhaustion requirement.  And the Sixth Circuit has not yet spoken on the issue of prudential exhaustion in these recent cases. See Castaneda-Mondragon v. Acuna, No. 25-cv-03044, ECF No. 13 at PageID 101 (W.D. Tenn. Dec. 30, 2025).  Therefore, exhaustion may only be required here based on "sound judicial discretion."  McCarthy, 503 U.S. at 144.  But, exhaustion may be excused if "the legal question

6

is fit for resolution and delay means hardship, or exhaustion would prove futile." Shalala, 529

U.S. at 13.

Cruz's failure to exhaust is excused. First, the question he poses in the Petition is fit for

resolution and undue delay would impose hardship on him. The Parties do not dispute any

material facts. (See ECF Nos. 8 at PageID 40–41; 11 at PageID 52–53.) Thus, deciding which

statute applies to Cruz's detention is a purely legal question, "which is right in a federal court's

wheelhouse." Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8. Further, if Cruz is

required to pursue an appeal with the BIA, his appeal process would likely take six months or

more. See id. (citing Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 U.S. Dist. LEXIS

175767, at *9 (E.D. Mich. Sep. 9, 2025)). Bond hearings were designed to prevent prolonged

detention during removal proceedings, which are often lengthy. Reyes, 2025 U.S. Dist. LEXIS

175767, at *9 (citations omitted). Therefore, denying Cruz the chance to have a bond hearing

merely because he did not appeal to the BIA[1] may force him "to endure six months or more of

potentially unlawful detention and thus would cause him great hardship." Contreras-Lomeli,

2025 U.S. Dist. LEXIS 207162, at *8.

Furthermore, the futility of exhaustion is an independent reason to excuse exhaustion

here. The BIA stated in Yajure Hurtado that § 1225(b)(2)(A) applies to detained illegal

immigrants who "have been residing in the United States for years." 29 I. & N. Dec. at 220–21.

Thus, any appeal would be futile, and exhaustion is excused.

---

[1] There is no evidence that Cruz has received an appealable decision from the
immigration court. Thus, the risk of undue delay is even greater here than in cases where, for
instance, an IJ held a bond hearing and denied bond.

## II.    Statutory Interpretation

"A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void[,] or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)). Each word within a statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" Kentucky v. Biden, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing Walters v. Metro. Edu. Enters., Inc., 519 U.S. 202, 207, (1997)).

Custody over noncitizens during removal proceedings is generally governed by two statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and detention of aliens"). Section 1225(b) requires mandatory detention, providing in relevant part:

> (b)    Inspection of applicants for admission
>          . . .
> (2)    Inspection of other aliens
>        (A)    In general
>               Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is a noncitizen "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). Under this section, all applicants for admission "shall be detained." Id. § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing in relevant part:

8

    (a)      Arrest, detention, and release
On a warrant issued by the Attorney General, an alien <u>may</u> <u>be</u> <u>arrested</u> <u>and</u> <u>detained</u> pending a decision on whether the alien is to be removed from the United States.   Except as provided in subsection (c) and pending such decision, the Attorney General—
    (1)    <u>may</u> <u>continue</u> <u>to</u> <u>detain</u> the arrested alien; and
    (2)    <u>may</u> <u>release</u> the alien on—
        (A)    bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . . .

8 U.S.C. § 1226(a) (emphasis added).  The exception in § 1226(c) prohibits releasing on bond a noncitizen found to be inadmissible, who <u>also</u>,

> is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .

<u>Id.</u> § 1226(c)(1)(E)(ii).  "Noncitizens arrested and detained under § 1226 have a right to request a custody redetermination (i.e., a bond hearing) before an [Immigration Judge ('IJ')]."  <u>Lopez-Campos</u>, 2025 WL 2496379, at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified).  "The IJ evaluates whether there is a risk of nonappearance or danger to the community."  <u>Id.</u> (citing <u>Guerra</u>, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).  Thus, except for those noncitizens with a record of certain criminal offenses, § 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a hearing before an IJ on the issue.[2]

    Cruz argues that ICE's new interpretation of § 1225(b)(2)(A) violates his Fourth Amendment protections and due process under the Fifth Amendment.  (ECF No. 2-3 at PageID

---

[2] <u>See</u> 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . .  After an initial custody determination . . . the respondent may . . . request amelioration of the conditions under which he or she may be released. . . .  [T]he immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .").

31.)  He also argues that it violates the Eighth Amendment prohibition on cruel and unusual

punishment as he is detained in a facility experiencing "massive overcrowding issues," which

"has led to loosening of internal directives that prohibit is[o]lation and mistreatment of detainees

without proper means to appeal to an independent adjudicator."  (ECF No. 2 at PageID 25.)  He

argues that 8 U.S.C. § 1226(a) applies to his detention because he not an "arriving alien."  (ECF

No. 8 at PageID 43.)  He points to the regulation defining "arriving alien" as

> an applicant for admission coming or attempting to come into the United States at
> a port-of-entry, or an alien seeking transit through the United States at a port-of-
> entry, or an alien interdicted in international or United States waters and brought
> into the United States by any means, whether or not to a designated port-of-entry,
> and regardless of the means of transport.

(Id. at PageID 42 (quoting 8 C.F.R. § 1.2).)  He argues that, because he entered the United States

"nearly nineteen years ago, between ports of entry," he is not an "arriving alien" and thus §

1226(a) applies.  (Id. at PageID 42–43.)  For these reasons, he seeks his immediate release.

(ECF No. 12 at PageID 80.)

Respondents argue that § 1225(b)(2)(A), not § 1226(a), applies to Cruz because he

"entered [the United States] without inspection or parole" and thus remains "an 'applicant for

admission' who is treated, for constitutional purposes, as if stopped at the border."  (ECF No. 11

at PageID 56.)  As a result, they assert "he is subject to mandatory detention and not entitled to a

bond hearing."  (Id.)  They incorporate by reference their statutory arguments from previous

cases such as Godinez-Lopez, 2025 WL 3047889.  (Id. at PageID 56–57.)  They also argue that

Cruz's due process rights have not been violated because he is not being detained "any longer

than it might take to effect his removal to Mexico if he loses before the [IJ]."  (Id. at PageID 61.)

Further, according to Respondents, the Fourth Amendment has not been violated because his

seizure was reasonable.  (Id. at PageID 62.)  Finally, Respondents argue that, if the Court decides

that § 1226 applies to Cruz, a bond hearing should be ordered instead of immediate release, so that an IJ can determine whether to grant Cruz a bond.  (Id. at PageID 63.)

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Respondents' contention that Cruz is "seeking admission."  Beginning with the titles, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  The title of § 1226(a) is "Apprehension and detention of aliens."  Although titles of statutes are not controlling, they are "tools available for the resolution of a doubt about the meaning of a statute."  Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified).  Here, § 1225's title describes "arriving aliens" who are placed into "expedited removal" proceedings.  But Cruz was not "arriving" when he was detained far away from the United States border, after having been in this country for nineteen years.  (ECF No. 8 at PageID 43.)  Also, the record does not show that he was eligible for expedited removal proceedings.  Thus, the mandatory detention provision of § 1225 does not apply to him.

Further, the subject matter of § 1225 undercuts Respondents' reading of the statute.  Section 1225 describes the process of inspecting and removing immigrants actively crossing the border.  See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible.").  And Respondents' reading of § 1225(b)(2)(A) ignores several words and phrases within the statute itself.  "If possible, every word and every provision is to be given effect."  Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012).  But to apply § 1225(b)(2)(A) to Cruz would render the following underlined words superfluous:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and

11

beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). The record does not show that Cruz was seeking admission at the time of his detention, and nor does it show that he had received a determination by an immigration officer that he was "not clearly and beyond a doubt entitled to be admitted." The language of § 1225(b)(2)(A) makes sense in the context of the border, but not in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for nineteen years. To interpret "alien seeking admission" using its ordinary meaning but outside the context of the provision, as argued by Respondent, is untenable.

Also, Respondents' interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous. That subsection carves out an exception to the general rule that an arrested noncitizen is eligible for a bond. Under subsection (c), a noncitizen with a certain criminal history must be mandatorily detained. 8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . ."). But, under Respondents' reading of § 1225, all arrested noncitizens must be detained without bond. Thus, § 1226(c) would have no purpose. Yet, courts must "give effect, if possible, to every clause and word of a statute." Duncan v. Walker, 533 U.S. 167, 174 (2001). Cruz's reading of the statute is the only one compatible with the presence of § 1226(c). What is more, Cruz has no criminal record in the United States, so this mandatory detention provision cannot conceivably be applied to him. See § 1226(c)(1)(E)(ii).

12

The plain language of § 1226(a) describes Cruz's situation.  That section applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Cruz was charged with being removable and detained in west Tennessee.  Thus, the Attorney General has discretion under this section.  She "may continue to detain [him]" or she "may release [him] on bond."  (Id.)  But the Attorney General may not deny him the bond hearing to which he is entitled.  See 8 C.F.R. § 1236.1(c)(8), (d)(1).

 Not only is the plain language of §§ 1225 and 1226 sufficient to support a finding in Cruz's favor, but the Congressional intent behind § 1226(a) is also supportive.  In 2025, Congress passed the Laken Riley Act, adding a subsection to § 1226(c) to preclude persons with criminal histories from receiving bond.  Pub. L. No. 119-1, 139 Stat. 3 (2025).  Congress would not have added exceptions to the broad rule of § 1226(a) if, as Respondents assert, it intended § 1226(a) to give way to § 1225(b)(2)(A) in all cases.  See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific exceptions to [a rule] hardly proves that the [rule] does not apply generally.  In fact, it proves the opposite.").  On the contrary, Congress's recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025.  After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless."  Lopez-Campos, 2025 WL 2496379, at *8 (quoting Maldonado v. Olsen, No. 25-cv-3142, 2025 WL 237441, *12 (D. Minn. Aug. 15, 2025)).

13

Finally, Respondents point to a newly published Fifth Circuit opinion which reached an opposite conclusion on these issues. (ECF No. 11 at PageID 58–59 (citing Buenrostro-Mendez v. Bondi, No. 25-20496, ___ F.4th ___, 2026 WL 323330 (5th Cir. Feb. 6, 2026)).) Particularly relevant to Cruz's arguments, the Buenrostro-Mendez court found that "seeking admission" is equivalent to being an "applicant for admission." 2026 WL 323330, at *4–5. As a result, the Fifth Circuit held that all those who have crossed the border unlawfully fall under § 1225, not § 1226, and thus are ineligible for bond hearings. Id. at *9.

Buenrostro-Mendez does not bind this Court, and its reasoning is not persuasive here. First, because it conflates the terms "seeking admission" with "applicant for admission," it renders the two phrases redundant. The canon against surplusage, and common sense, dictate that these terms should have different meanings because the statute includes them both in the same provisions and even in the same sentences. See Buenrostro-Mendez, 2026 WL 323330, at *12 (Douglas, J., dissenting) (quoting Scalia & Garner, supra, at 170). Second, the holding in Buenrostro-Mendez makes superfluous the existence of § 1226(c)(1), a part of the Laken Riley Act, which lists certain crimes that render an applicant ineligible for a bond hearing. If a criminal record makes a bond hearing impossible, it makes little sense that all bond hearings for unlawful entrants are impossible. See Buenrostro-Mendez, 2026 WL 323330, at *13 (Douglas, J., dissenting).

Thus, given the plain language of §§ 1225 and 1226, the arrest and detention of an illegal immigrant who has been continuously present in the United States for nineteen years is governed by § 1226(a), and is subject to the discretionary bond process in that provision.

14

### III.    Due Process

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)."  Lopez-Campos, 2025 WL 2496379, at *9 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)).  In the context of civil immigration detention, the Sixth Circuit applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen.  See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th Cir. 2020).  Those factors include (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335.

Cruz argues that Respondents violated the Due Process Clause of the Fifth Amendment by "deny[ing] him access to any bond hearing for the entire pendency of his proceedings, which, in practice, may last many months or longer."  (ECF No. 8 at PageID 45.)  But Respondents contend that Cruz's due process rights were not violated because, without a lawful entry, he should be "'treated' for due process purposes 'as if stopped at the border.'"  (ECF No. 11 at PageID 60 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020)).)

Here, because § 1226(a) applies to Cruz, he is owed the process given to him under that statute.  As for the Mathews factors, (1) Cruz has a strong private liberty interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and danger to the community, and, (3) given Cruz's clean criminal record, it will be difficult for the Government to demonstrate an interest in his detention.  Indeed, before he was apprehended, Cruz was present in

the United States for nineteen years, "maintained steady employment, supported his family, and developed substantial community ties in Memphis."  (ECF No. 8 at PageID 41.)  These facts indicate his ties to the United States, his desire to remain, and his expectation that he would remain free from government custody.  Also, he was not otherwise incarcerated when ICE detained him.

As a result, his detention without bond violated his liberty interest, which cannot be casually tossed aside.  Thus, Cruz is entitled to immediate release.  See Villafranca Lara v. Ladwig, No. 26-CV-02079-SHL-tmp, 2026 WL 401204, at *10 (W.D. Tenn. Feb. 12, 2026) ("Because ICE purported to detain [petitioner] under § 1225(b)(2)(A), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a)."). Accordingly, his detention under the mandatory detention framework of § 1225(b)(2)(A) violates his due process rights.  Thus, consistent with the Court's decision in Godinez-Lopez, and after consideration of the record, Cruz's petition is **GRANTED**.[3]

## IV.    Attorney's Fees and Costs

Petitioner seeks attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.  (ECF No. 2 at PageID 25.)  Section 2412(b) allows a court to award "reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States." 28 U.S.C. § 2412(b).  The Federal Rules require that claims for attorney's fees and related expenses be made by motion.  Fed. R. Civ. P. 54(d)(2)(A).  So Cruz must timely file a motion that complies with Local Rule 54.1(b) to seek attorney's fees and costs.  See LR 54.1(b).

---

[3] Because the petition is granted on other grounds, the Court need not reach the questions of whether Cruz's detention violated the Fourth or Eighth Amendments.

16

## CONCLUSION

For the reasons stated above, the Petition is **GRANTED**.  Respondents are ordered to release Cruz immediately.  Respondents are **ENJOINED** from pursuing Cruz's detention under 8 U.S.C. § 1225(b)(2)(A).  Respondents are further **ORDERED** to file a Status Report with this Court on or before February 23, 2026, to certify compliance with this Order.

**IT IS SO ORDERED,** this 18th day of February, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE